UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

       -against-                       <u>MEMORANDUM & ORDER</u>
                                                89-CR-0229(JS)
FERNANDO ALVAREZ,

                     Defendant.
---------------------------------X
APPEARANCES
For United States:  Erin Argo, Esq.
                  U.S. Attorney's Office
                  Eastern District of New York
                  271 Cadman Plaza East
                  Brooklyn, New York 11201

For Defendant
Fernando Alvarez:  Joseph J. Ferrante, Esq.
                  Keahon, Fleischer, Duncan & Ferrante
                  1393 Veterans Memorial Highway
                  Suite 312 North
                  Hauppauge, New York 11788

SEYBERT, District Judge:

        Defendant Fernando Alvarez ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic and certain alleged medical conditions. (Mot., D.E. 767; Def. Reply, D.E. 771; Def. Resp., D.E. 772.) The Government opposes the motion. (Gov't Opp., D.E. 768.) For the reasons set forth below, the motion is DENIED.

<u>BACKGROUND</u>

On November 1, 1991, Judge Arthur D. Spatt[1] sentenced
Defendant to four concurrent life sentences, as well as concurrent
five- and ten-year prison sentences, following jury verdicts on
one count of RICO; one count of conspiracy to distribute and
possess with intent to distribute more than one kilogram of heroin
and five kilograms of cocaine; one count of violent crime in aid
of racketeering activity; one count of conducting a financial
transaction with narcotics proceeds; one count of violent crime in
aid of racketeering activity; and one count of possession with
intent to distribute more than 500 grams of heroin.  (See, Nov. 1,
1991 Judgment Entry; Sent'g Tr., D. E. 5; see also Gov't Opp., 8,
at 3-4.)  As of the date of this Order, Defendant has served almost
29 years at the Bureau of Prisons ("BOP") United States
Penitentiary located in Lewisburg, Pennsylvania ("USP Lewisburg").

Defendant is 55 years old and has not provided the Court
with any reports of physical illnesses or underlying conditions
from the time of his sentencing. Rather, Defendant alleges that he
is "55 years old and [ ] vulnerable to COVID-19," and "powerless
to take the preventative self-care measures directed by the CDC
for his high-risk group to remain safe from COVID-19 infection."
(Mot. at 9-10.)  As of the date of this Order, USP Lewisburg

---

[1] This matter was reassigned to the undersigned on June 23, 2020.

reports a total of one COVID-19 case at the facility, a staff member who has since recovered.

Defendant failed to submit a request for compassionate release to the Warden at USP Lewisburg. He asks the Court to waive the required exhaustion of administrative remedies under the First Step Act. Defendant argues that "the emergency nature of this filing [ ] may not permit full exhaustion before fatalities ensue," and that he "could be prejudiced which . . . could result in death if he is unable to practice 'social distancing.'" (Mot. at 2.) Defendant filed the instant motion on April 30, 2020, requesting the Court decrease his sentence to time-served and impose a term of supervised release with a home detention condition for the remainder of his original term of incarceration.

<u>DISCUSSION</u>

"'A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.'" <u>U.S. v. Rabuffo</u>, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting <u>U.S. v. Gotti</u>, No. 04-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020). As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provides:

> The court may not modify a term of imprisonment once it has been imposed except that--in any case--the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

A defendant seeking relief under Section 3582(c)(1)(A) "bears the burden of showing that his release is justified." U.S. v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. Jun. 23, 2020); see also U.S. v. Fleming, No. 18-CR-0197, 2020 WL 2838511, at *2 (E.D.N.Y. June 1, 2020) ("It is [defendant's] burden to show that there are 'extraordinary and compelling reasons' that warrant a modification of his sentence."); U.S. v. Schultz, No. 17-CR-1935, 2020 WL 2764193 at *2 (W.D.N.Y. May 28, 2020) ("The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute.").

Defendant failed to comply with Section 3582(c)(1)(A)'s exhaustion requirement, and now asks the Court to waive compliance because, he alleges, he will be prejudiced and at risk of contracting COVID-19 without such waiver.  The Court disagrees with Defendant's rationale, and refuses to waive exhaustion, as explained more fully below.  In any event, Defendant is unable to show that extraordinary and compelling circumstances justify his

4

release, and the factors set forth in 18 U.S.C § 3553(a), and analyzed at Defendant's sentencing, weigh heavily against his release.

I.   As to Defendant's Failure to Exhaust Administrative Remedies

Section 3582(c) expressly states: "The court may not modify a term of imprisonment once it has been imposed except" in the circumstances enumerated by Congress in the statute.  18 U.S.C. § 3582(c).   Consequently, a defendant's failure to exhaust administrative remedies is a "threshold matter" preventing the Court from considering a Section 3582 application.  See U.S. v. Baez, No. 09-CR-0074, 2020 WL 2615928, at *2 (E.D.N.Y. May 22, 2020); see also U.S. v. Napout, No. 15-CR-0252, 2020 WL 1872455, at *1 (E.D.N.Y. Apr. 14, 2020) (failure to satisfy the statutory exhaustion requirement "deprived the Court of the authority" to consider his Section 3582 application).

Defendant concedes that he has not completely exhausted his administrative remedies, as he never filed a request for compassionate release with the Warden at USP Lewisburg.  Instead, he argues that his application satisfies an exception to the exhaustion requirement recognized by the Second Circuit in Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019).

In Barr, a divided panel affirmed the district court's determination that administrative exhaustion was required where plaintiffs, who relied on medical marijuana for a variety of health

conditions, challenged the classification of marijuana as a Schedule I drug under the Controlled Substances Act ("CSA"). Id. at 113. The Court noted that when "'Congress specifically mandates it, exhaustion is required . . . But even where Congress has not clearly required exhaustion,' a court may still impose it as an act of 'sound judicial discretion.'" Id. at 116. The Court applied an exhaustion requirement to the plaintiffs' claim as "a prudential rule of judicial administration." Id. at 115. Therefore, contrary to Defendant's assertions, Barr is not a statutorily-mandated exhaustion case. Rather, it addresses a judicially-crafted exhaustion requirement that was "subject to judge-made exceptions." U.S. v. Woodson, No. 18-CR-0845, 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); see also U.S. v. Wright, No. 17-CR-0695, 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020) (Barr "is inapposite" in Section 3582 case).

The Court is currently constrained to deny the request, given that Defendant cannot provide documentation to the Court of his request to the Warden for compassionate release. See U.S. v. Sosa, No. 18-CR-0229, 2020 WL 4252683, at *1 (S.D.N.Y. July 24, 2020) (collecting cases). (See also Gov't Opp. at 5-9.) While this Court has, on another occasion, waived 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement, it did so where the circumstances clearly indicated that "strict enforcement would not serve the Congressional objective of allowing meaningful and

prompt judicial review." U.S. v. Sanchez, No. 18-CR-0140, 2020 WL 1933815, at *4-5 (D. Conn. Apr. 22, 2020) (collecting cases); see U.S. v. Cohen, No. 17-CR-0372, 2020 WL 3960513, at *2 (E.D.N.Y. July 13, 2020) (Seybert, J.) (waiving exhaustion requirement where strict compliance with Section 3582(c)(1)(A) was rendered futile given the defendant's anticipated release date). Unlike Cohen, here, not only are there are no time constraints that would render exhaustion futile, but Defendant does not provide the Court with the "documentation necessary to show either that he has exhausted his administrative remedies with the BOP or that thirty days have elapsed since the warden received his request for relief." U.S. v. Mathis, No. 02-CR-0891, 2020 WL 550645, at *1 (E.D.N.Y. Feb. 4, 2020); Cohen, 2020 WL 3960513, at *1-2. "Absent proof that such a request was made, the Court cannot verify that [Defendant] has exhausted his administrative remedies" and the Court is "thus powerless to act." Sosa, 2020 WL 4252683, at *1. Defendant may renew his motion if he attaches documentation proving that he satisfied the exhaustion requirements.

II.   As to the Remainder of Defendant's Application

        Although not required, the Court will address the remainder of Defendant's application to reduce duplicative filings.

        A.   As to the COVID-19 Pandemic

Extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). Thus, compassionate release is generally limited to cases of serious illness or impairment, advanced age, or a need to care for a child, spouse, or registered partner. See id.; see also U.S. v. Traynor, No. 04-CR-0582, 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009). Indeed, Congress indicated that Section 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." Traynor, 2009 WL 368927, at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3304).

Defendant argues that extraordinary and compelling circumstances exist because he is "55 years old and he is vulnerable to COVID-19." (Mot. at 10.) The Court disagrees. Defendant does not identify any medical conditions that put him at heightened risk of contracting COVID-19. In fact, Defendant does not provide the Court with any medical records whatsoever to support his assertion that he is particularly susceptible to COVID-

19.  Although Defendant appears to be in good health, he believes he is at high risk of contracting COVID-19 because he is 55 years old.  The age of a defendant alone, added to the sheer possibility of exposure to COVID-19, does not amount to extraordinary and compelling circumstances in the context of the COVID-19 pandemic. See U.S. v. Vailes, No. 16-CR-0297, 2020 WL 3960505, at *3 (E.D.N.Y. Jul. 13, 2020) ("While . . . sympathetic to the defendant's concerns about contracting COVID-19, he has not established that the pandemic presents an 'extraordinary and compelling' reason for his release, because he has no conditions that make him particularly vulnerable to COVID-19."); U.S. v. Gioeli, No. 08-CR-0240, 2020 WL 2572191, at *4 (E.D.N.Y. May 21, 2020) ("Without minimizing the seriousness of the pandemic and the present conditions at [the defendant's facility], I cannot find that the danger defendant faces from the mere threat of exposure to COVID-19 constitutes an extraordinary and compelling reason for granting compassionate release."); Rabuffo, 2020 WL 2523053, at *3 ("[Defendant]'s age, combined with her record of mostly sound health, leave her far short of meeting the criteria for compassionate release."); U.S. v. Haney, No. 19-CR-0541, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) ("Admittedly, [defendant's] age of 61 places him at a higher risk of experiencing complications from COVID-19 than the general prison population. But if [defendant's] age alone were a sufficient factor to grant

compassionate release in these circumstances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release and that would arguably have a devastating effect on a national community that is now itself so under stress.").

Defendant has not adequately shown that he is particularly likely to contract COVID-19. Defendant is housed at USP Lewisburg, where there has been only one reported case of COVID-19 in a staff member who has since recovered, and none amongst the inmates. This fact overwhelmingly weighs against granting Defendant's application. See U.S. v. Seshan, No. 14-CR-0620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying compassionate release application where "of the 12 other inmates at [defendant's facility] who were tested for COVID-19, none tested positive"); U.S. v. Rodriguez, No. 16-CR-0167, 2020 WL 1866040, at *3 (S.D.N.Y. Apr. 14, 2020) (denying application for compassionate release where "the MDC -- where [defendant] is housed -- reported a total two inmates who tested positive for COVID-19. The MDC houses 1,734 total inmates. That means that approximately 0.12% of MDC inmates have been confirmed to have COVID-19.") (internal citations omitted).

The spread of COVID-19 outside of correctional facilities by itself does not call for the compassionate release

10

of an inmate confined within a correctional facility.  See <u>U.S. v.</u> <u>Weeks</u>, No. 16-CR-0167, 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020) ("All he has done is to note that he is in prison and there is a COVID-19 outbreak nationwide.  That is not enough . . . Although the health concerns from COVID-19 are undoubtedly serious (for inmates and non-inmates alike), [defendant] has proffered nothing more than conjecture about how [the facility] has failed to address the COVID-19 crisis appropriately[.]"); <u>see</u> <u>also</u> <u>U.S.</u> <u>v. Raia</u>, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").  Nor does an abstract risk of potential exposure in a BOP facility, standing alone, constitute extraordinary and compelling circumstances.  See <u>U.S. v. Gioeli</u>, No. 17-CR-0116, 2020 WL 2572191, at *4 (E.D.N.Y. May 21, 2020) ("[T]he mere possibility of contracting a communicable disease, in the absence of any BOP failures, is insufficient.") (internal quotation marks and citation omitted).

Generally, a defendant seeking compassionate release must make a showing of a current, particularized risk of contracting COVID-19 at the correctional facility at which he is housed.  See <u>U.S. v. Vence-Small</u>, No. 18-CR-0031, 2020 WL 2214226,

at *2 (D. Conn. May 7, 2020) ("In light of [defendant's]
splenectomy, diabetes, hypertension, and age, it is undisputed
that she is at a much greater risk than the average person to
contract the virus as well as to experience very serious or lethal
complications. What is missing, however, is evidence that
[defendant] is presently at more than a negligible risk of
contracting the virus or that she would be significantly safer
from the virus if she were granted home confinement as she
proposes.") (emphasis in original).

Although Defendant asserts that "[c]onditions of
confinement at USP Lewisburg create an optimal environment for the
transmission of contagious disease," (Mot. at 8-9), he has not
shown as a factual matter that USP Lewisburg has been unable to
contain the spread of the virus. See U.S. v. Denault, No. 11-CR-
0121, 2020 WL 2836780, at *2 (E.D.N.Y. Jun. 1, 2020) (denying
compassionate release motion where defendant failed to
"demonstrate[ ] that personnel at [his facility] are unable, or
are taking inadequate steps, to protect him from COVID-19," and
merely proffered "general, speculative allegations about the risk
associated with his conditions of confinement"); U.S. v. Gileno,
No. 19-CR-0161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020)
("With regard to the COVID-19 pandemic, [defendant] has also not
shown that the plan proposed by the Bureau of Prisons is inadequate
to manage the pandemic within [defendant's] correctional facility,

or that the facility is specifically unable to adequately treat [defendant].").

The Court finds that Defendant has failed to establish that the COVID-19 pandemic provides a justification for his compassionate release. Defendant is unable to adequately prove the existence of extraordinary and compelling reasons for the modification of his sentence arising out of the pandemic, as he does not suffer from any underlying conditions making him more susceptible to contracting COVID-19 and has not alleged any shortcomings on behalf of USP Lewisburg to control the virus' spread inside the facility.

B.    As to the Length of Defendant's Sentence

In his reply, as well as the reply submitted by his counsel, Defendant argues that the excessive length of his sentence constitutes an extraordinary and compelling circumstance justifying his release. According to Defendant, his 30 years of incarceration amount to adequate punishment, he has undergone substantial rehabilitation during that time, and he was sentenced under sentencing laws and policies now recognized as unlawful by the Supreme Court. Thus, Defendant believes that four consecutive life sentences far exceeds the severity of his crimes, and that were he sentenced today, such sentence would be substantially shorter. As the Court will explain, Defendant has not put forward sufficient information to establish that these facts amount to

extraordinary and compelling circumstances.  Moreover, the factors
set forth in 18 U.S.C § 3553(a) counsel against granting
Defendant's motion.

Generally, the rehabilitation of an inmate during his
incarceration is not grounds for compassionate release.  See, e.g.,
Weeks, 2020 WL 1862634, at *3 ("[T]he Defendant's submission
primarily relies on his efforts to 'grow and excel,' while
[incarcerated], through vocational training and his work as an
orderly.  Although those efforts . . . are indeed admirable, they
are not grounds for release under Section 3582(c)(1)(A)"); U.S. v.
Lisi, No. 15-CR-0457, 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24,
2020) (finding that "rehabilitation of the Defendant" did not raise
"an extraordinary and compelling reason for compassionate
release") (internal quotation marks and citation omitted).
Indeed, "Congress set forth only one limitation when it delegated
authority to the Sentencing Commission to develop standards for
identifying 'extraordinary and compelling reasons' for a sentence
reduction."  U.S. v. Millan, No. 91-CR-0685, 2020 WL 1674058, at
*7 (S.D.N.Y. Apr. 6, 2020).  "Rehabilitation of the defendant alone
shall not be considered an extraordinary and compelling reason."
28 U.S.C. § 994(t) (emphasis in original).

However, courts have found extraordinary and compelling
circumstances to exist when presented with applications by
defendants who were sentenced at a very young age, had spent

substantial time in prison, had demonstrated profound rehabilitation during that time, and had identified certain defects or inequities in their sentence. See, e.g., Millan, 2020 WL 1674058, at *8; U.S. v. Hope, No. 90-CR-6108, 2020 WL 2477523, at *2 (S.D. Fla. Apr. 10, 2020) ("[Defendant's] original, mandatory life sentence represents the type of sentencing disparity that the First Step Act was enacted to redress--as demonstrated by the fact that if sentenced today his maximum statutory sentence would be 35 years, his maximum guidelines sentence would be 32 years, and he has already served nearly 30 years in prison.") (emphasis in original); U.S. v. Maumau, No. 08-CR-0758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he court concludes that a combination of factors -- [defendant's] young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment -- establish an extraordinary and compelling reason to reduce [defendant's] sentence.").

Millan, which the Defendant relies on in his request, is particularly noteworthy. There, the United States District Court for the Southern District of New York granted the defendant's compassionate release application of "a non-violent, first-time offender, [who] served more than 28 years of the life sentence imposed . . . following his conviction at trial for" being "a

15

leader of a large-scale narcotics distribution organization[.]"
Millan, 2020 WL 1674058, at *8.  In doing so, the court explained:

> Mr. Millan is no longer the immature and irresponsible
> young man who committed his offenses in his early 20s.
> Rather, today he is a more mature and evolved adult of
> 57 years. In the almost three decades that have passed
> since he was arrested (and detained) in 1991, and despite
> having had no realistic hope of release, Mr. Millan has
> done everything in his power to rehabilitate himself, as
> demonstrated    by    his    genuinely    exceptional
> accomplishments and meritorious prison record. He is
> remorseful   and   contrite   and   has   fully   accepted
> responsibility  for  his  crimes.  In  the  almost  three
> decades that he has been incarcerated, Mr. Millan has
> conducted himself as a model prisoner and demonstrated
> exceptional character. He has developed into a man of
> great faith and a leader of the religious community at
> FCI Fairton and has demonstrated a commitment to working
> worth  at-risk  youth  and  suicide-prevention.  Section
> 3553(a)(b),  the  need  to  avoid  unwarranted  sentencing
> disparities, also counsels granting the motion based on
> his co-defendants' terms of imprisonment.

Id.

        Defendant argues that that his circumstances are similar
to those of the defendant in Millan, and therefore his release is
warranted for the same reasons.  Some superficial similarities
exist between Defendant and Millan.  Both were sentenced to terms
of life imprisonment at an early age for their roles in large-
scale  conspiracies  to  traffic  narcotics,  and  both  brought
applications  for  compassionate  release  after  spending  most  of
their lives in prison.  Beyond that, the Court sees very little in
common between the Defendant's application and that of Millan.

The court in <u>Millan</u> cited an exhaustive record of the defendant's remarkable rehabilitation efforts during his incarceration.  The defendant successfully completed dozens of BOP rehabilitative programs, involving more than 7,600 hours of programming and apprenticeships, earned an Associate's Degree in Business Administration, and "worked at what amounts to a full-time job for . . . 18-plus years," all "without any tangible incentive other than self-improvement, given that his life sentence meant that he could neither earn any 'good-time' credit nor receive any other sentence reduction benefit."  <u>Id.</u> at *9. Moreover, "[t]he Corrections Officers and other BOP staff at [the facility] consistently describe[d] Mr. Millan as a 'model inmate,'" and he ascended to a leadership role within the religious community at his correctional facility.  <u>Id.</u> at *10-12.  He was a leader at an outreach program dedicated to suicide prevention and worked with at-risk youth.  <u>Id.</u> at 12.  Finally, the BOP staff at his correctional facility were "[u]nwavering" in their support for a reduction of his sentence.  <u>Id.</u> at *14.  Only after taking these facts into consideration, as well as the fact that all but one of defendant's co-conspirators had been released, the court found the existence of extraordinary and compelling circumstances that warranted a reduction of his sentence from life imprisonment to time-served.  <u>Id.</u> at *15.

Here, Defendant cites no analogous rehabilitative efforts or other evidence of his changed circumstances, except for his uncorroborated assertion that he only committed "a few minor disciplinary violations over the course of his more than 30 years behind bars." (Def. Reply at 5.)  Although his improved behavior is commendable, it is neither extraordinary nor compelling to warrant his release.  Finding the existence of extraordinary and compelling circumstances where a defendant has "virtually" no disciplinary record (see Def. Reply at 5) would expand the extremely narrow circumstances in which Congress permitted courts to award such relief to a remedy handed out as a matter of course especially when model prison conduct is expected.  See U.S. v. Nwankwo, 12-CR-0031, 2020 WL 2576145, at *1 (S.D.N.Y. May 21, 2020) ("While [defendant's] Motion includes more detail about conditions at [the facility] and [defendant's] generally good behavior while incarcerated . . . the additional information does not alter the Court's conclusion that [defendant] did not demonstrate the 'extraordinary and compelling reasons' for release required by Section 3582.").

Therefore, the Court finds that Defendant has not provided sufficiently exceptional evidence of his rehabilitation to warrant a reduction of his sentence.  Pursuant to this finding, the Court may only order the compassionate release of Defendant if he establishes something objectionable about the length of his

sentence itself.   To that end, Defendant alleges that the Court sentenced him to a much longer sentence than he would have received today due to the Supreme Court's decisions in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>U.S. v. Booker</u>, 543 U.S. 220 (2005), and <u>Alleyne v. United States</u>, 570 U.S. 99 (2013).   (Mot. at 3.) In those cases, the Supreme Court limited the instances in which sentencing enhancements beyond prescribed statutory minimums are permitted, and decreased courts' ability to impose such enhancements without approval from a jury.   Defendant argues that he was therefore sentenced on an "inadequate standard of proof [ ] that resulted in a much longer sentence than he would have received today" because <u>Apprendi</u> and <u>Booker</u> limit the statutory sentencing range to zero to twenty years, as set forth in 21 U.S.C. § 841(b)(1)(C).   (Mot. at 3.)

Defendant's argument is without merit.   The Court previously denied Defendant's two motions to vacate on this basis pursuant to 28 U.S.C. § 2255 (<u>see</u> Aug. 8, 2016 Order, D.E. 733), and the Second Circuit denied Defendant leave to file a successive motion to vacate (<u>see</u> Mandate, D.E. 765).   As the Court explained to Defendant, "[t]he Second Circuit has held that <u>Apprendi</u> and case law deriving from that decision do not apply retroactively to cases on collateral review. . . ." <u>Garcia v. U.S.</u>, Nos. 97-CV-2962, 90-CR-0890, 2009 WL 484435, at *4 n.3 (S.D.N.Y. Feb. 24, 2009) (collecting cases); <u>Forbes v. U.S.</u>, 262 F.3d 143, 146 (2d

19

Cir. 2001) (per curiam) (holding that Apprendi does not apply retroactively).

Further, applications for compassionate relief are not vehicles for collaterally attacking the merits of a defendant's sentence(?).  See Lisi, 2020 WL 881994, at *4 ("[T]he Court believes that it would be both improper and inconsistent with the First Step Act to allow [defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition."); U.S. v. Rivernider, No. 10-CR-0222, 2020 WL 597393, at *4 (D. Conn. Feb. 7, 2020) ("To my knowledge, nobody has suggested that the 'extraordinary and compelling' standard can be satisfied by claims of legal error or other alleged wrongs that are cognizable on direct appeal . . . or by means of a habeas corpus petition.").  As there was nothing unlawful about Defendant's sentence at the time the Court issued it, he cannot establish extraordinary and compelling circumstances by merely identifying subsequent changes in the law in his favor.

C.   As to the Section 3553(a) Factors

Even if Defendant established an arguable basis for release, the Section 3553(a) factors make clear that no such relief is warranted.  In fact, this is a case where the Section 3553(a) factors overwhelm most other considerations.  Defendant received his sentence based on the Court's analysis of these factors, and

this Court's consideration remains consistent.  Regarding the nature and circumstances of his offenses, Defendant repeatedly employed violence as one of the leaders of a narcotics ring, from ordering individuals murdered to personally inflicting injuries upon others, all while pocketing a large percentage of the ring's profits.  The concurrent life sentences imposed were deemed necessary to reflect the seriousness of Defendant's offenses, promote respect for the law, and deter future criminal conduct. Reducing Defendant's sentence after less than 30 years would not further the goals of 3553(a), as it would not provide just punishment, promote respect for the law, or protect the public.

## CONCLUSION

Accordingly, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is DENIED in its entirety.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August   20  , 2020
       Central Islip, New York